CHARLES FLOHR AND EMMA FLOHR v. TERRITORY OF OKLAHOMA.

(Filed September 5, 1907.)

(91 Pac. 712.)

**CRIMINAL LAW—New Trial—Newly Discovered Evidence—Sufficiency.**
A motion for a new trial upon the ground of newly discovered evidence, made after the term at which the defendant was convicted and sentenced, which motion sets forth the evidence relied on, is not sufficient to justify a new trial of the cause, unless from a consideration of it the court can determine that the result of the trial would probably have been different had such new evidence been heard upon the trial.

(Syllabus by the Court.)

*Error from the District Court of Woods County; before J. L. Pancoast, Trial Judge.*

Affirmed.

*W. S. Denton* and *Robberts & Curran,* for plaintiffs in error.
*P. C. Simons, Att'y Gen'l,* for defendant in error.

Opinion of the court by

GILLETTE, J.: In order to a consideration of this case, which is an appeal from an order overruling a motion for a new trial, made after the term when judgment was entered and sentence pronounced, upon the ground of newly discovered evidence, and in considering such motion and the ground laid therefor, it is necessary first to notice the defendants' ground of defense on the trial of the cause. They were charged with larceny by stealth and fraud in the felonious taking of merchandise, the property of C. H. and Luella Richards, at Rusk, in Woods county, Oklahoma; the indictment setting out the time and place and the property alleged to have been stolen. When the case came on for trial the defense interposed and relied upon by the defendants was set out in a statement to the jury by one of defendants' counsel, as shown by the record in the case, and was in substance that,

while defendants were absent from their home in the state of Kansas as witnesses in a cause pending against the complaining witnesses at Wichita, Kansas, a scheme was devised, planned, and executed for the purpose of having a continuance of the case, then and there pending against Richards, and that during that time and for that purpose Richards slipped down to Flohr's place, in Woods county, Oklahoma, near Rusk, and in the night time secreted his (Richards') property upon Flohr's place, and the next morning sent an officer there and had him find the property so secreted. The property alleged to have been stolen was set out in the indictment, and a description of it required fourteen pages of closely typewritten matter, a large portion of which was recovered by a writ of replevin. Such a defense to an indictment charging the larceny of such property by fraud and stealth precludes the theory that Flohr and his wife had the possession of the property at his home at all, but substantially avers that, when the same was found there, it was by reason of the fraudulent and vicious act of Richards in secreting it there without his (Flohr's) knowledge or consent, and during his and his wife's absence from home

The evidence, upon the trial of the case showed that the property, when found at his place, was secreted in different portions of the house; some of it in the back part of and inside an organ, and some in the attic of the building; that, when Dr. Richards and his wife left Rusk, they left the key to their place of business with one Chamberlain, and that Flohr obtained possession of it from him by writing Richards, who was then in Illinois, that Chamberlain was disposing of the property and was not caring for it, and that if he (Flohr) had possession of it he would take good care of the same. Thereupon Richards telegraphed to Chamberlain to turn the key over to Flohr. Chamberlain testified that upon receipt of such telegram he did turn the keys over to Flohr. The testimony of Flohr himself upon the trial of the case upon cross-examination showed that he procured the keys and

possession of the store from Chamberlain; that he lived some ten miles from Rusk, and had no opportunity to know what Chamberlain's acts were, and that such statements written to Richards were made in the consciousness that he did not know the facts. In this way the evidence for the prosecution upon the trial of the cause accounted for the ability of Flohr to have gotten possession of the property charged to have been fraudulently stolen. From this it will appear that Flohr's possession of the property was, upon the trial, accounted for by each side upon theories that were directly antagonistic; upon the part of the territory by proof tending to establish a fraudulent larceny of the same, and by the defendant's attempting to show that the property was frudulently taken to his premises by Richards with a view of accusing him of the larceny thereof. These conflicting theories were settled by the verdict of the jury against the Flohrs.

Upon this motion for a new trial on the ground of newly discovered evidence it is proposed to show as a matter of defense to the charge of larceny in the indictment that the property charged to have been stolen, and which was found secreted at Flohr's house, was there by the mutual consent of the parties, through an alleged credit statement made by Dr. Richards to a business house in Wichita, Kansas, to which credit statement there was attached a written exhibit, and in which exhibit appears the following:

"I instructed Mr. Flohr, who had the keys to the store while I was away, to take all the jewelry and silverware in the store to his place, and I kept the most expensive jewelry and silverware, including * * * I also gave him or sent him keys to my trunk where good gold watches and rings, etc., * * * and told him to take it out and put in security somewhere, in case of fire or robbery or burglary. He took all this including the musical instruments, silver mounted ebony brushes, and silver mounted combs, the best of the fancy chinaware, perfumes and some other things up to his house for safe keeking. I should think he has about a $1,000 or $1,200 worth of goods in this line at his place."

This written statement is attached to the credit statement without any reference in the credit statement to the same, the person making it averring that, when Richards made it, he (Richards) said he would make a more complete property statement, which he afterwards did, and handed him the statement containing the language above quoted. The execution and delivery of this statement is positively denied by Richards and his wife, who also deny that the same is in the handwriting of either of them. The authenticity of this newly discovered evidence is, therefore, placed in much doubt, judging the same from the basis of the motion for a new trial alone. And it seems to us, when considered in connection with the defense made by Flohr upon the trial of the cause, it is so fully discredited as to justify the trial court in refusing to grant a new trial based thereon.

The defense now proposed, that Flohr received these goods under the direction of Richards and took them from the store to his dwelling house, eleven miles distant, is at direct variance with the defense stated at the beginning of the trial, to-wit, that Dr. Richards had, while he (Flohr) was absent from home in Wichita, slipped down there and secreted them in the house for the purpose of accusing him of the larceny of them. The motion for a new trial, if granted for such a reason, would be equivalent to authorizing a new trial upon such separate and distinct grounds as to permit the defendant to confess that he had originally defended the case upon false and malicious grounds, wherein he sought to charge Dr. Richards with an offense more heinous than the one charged in the indictment against himself, and, having been defeated in such falsehood, he now seeks to present the truth. Courts will not permit litigants to aver a given statement of facts to be true, and, when defeated in such averment, to have another trial upon a theory which confesses the first to have been falsely presented.

There is one other matter presented by the record deserving of notice. In the credit statement made at Wichita, Richards in the

enumeration of his business obligations set forth an item of indebtedness to Charles Flohr in the sum of $200, and also the fact that there was certain property at Flohr's place belonging to him, which Flohr claimed he held in satisfaction of $200 indebtedness from Richards to him. Touching this indebtedness and this property, it appears from the record that there was a cattle deal between them wherein Flohr received some twenty-three head of cattle from Richards which had a mortgage on them, which Richards testified he considered paid in the transfer of the cattle. This transaction was made the subject of investigation on the trial of the cause. Flohr claimed that he held certain property, such as mill fixtures and a buggy and harness found in his possession, as security for this indebtedness; Richards denying that he had any right to the possession of the same for such purpose. The testimony pro and con upon this subject shows that there was an unsettled difference between them with regard to this two hundred dollars item, and the fact that Richards should make mention of it in listing his obligations in a statement of liabilities to a mercantile concern we do not think would be such a confession of fact as to justify the granting of a motion for a new trial. The important question upon the trial was not so much the matter of indebtedness of Richards to Flohr as it was the question as to whether or not the property of Richards found at Flohr's place had been by Richards hypothecated to Flohr as a matter of security or in discharge of such obligation. This Richards denied, while Flohr attempted to account for his possession by claiming that that particular property was at his place by authority of Richards, in the settlement of such $200 item of claimed indebtedness. Such indebtedness may be admitted and Flohr still be guilty as charged. The merchantile statement of Richards, if known at the time of the trial, would have been competent as an item of evidence for the consideration of the jury, but we think not of such importance as that the verdict of the jury would have probably been changed in consideration of it.

The judgment of the court below is therefore affirmed.

Pancoast, J., who presided in the court below, not sitting; Irwin and Garber, JJ., absent; all the other Justices concurring.